FRANK HARMER V. STATE OF NEBRASKA.

276 N. W. 378

FILED DECEMBER 15, 1937.   No. 30183.

*C. E. Walsh*, for plaintiff in error.

*Richard C. Hunter, Attorney General,* and *Bert L. Overcash, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and ELDRED, District Judge.

DAY, J.

Harmer was convicted in the district court of the offense of breaking and entering, and was also found to be an habitual criminal. He appeals. The only defense was insanity, and the issues here relate to it.

In the night of April 25, 1936, Harmer was found by an awakened farmer in the farmer's garage at about 3:30 in the morning. Attracted by a light, the owner approached the building with a shotgun, and, when he heard a noise inside, shot the marauder through a hole in the garage. At the owner's command, Harmer, wounded and bleeding, crawled from the building through a hole. He was given medical attention, and removed to a distant hospital. When he recovered, he was returned by the sheriff to the county jail at Plattsmouth.

The garage was locked at the time, and an entry was

made through a hole made by tearing some boards loose from the side. A car inside was "jacked up," and some nuts had been removed which held the whole wheel and tire. Harmer's car was a short distance down the road, and the tire would fit his car.

Harmer was charged with being an habitual criminal in that in February, 1931, he was convicted of hog-stealing; and that in November, 1934, he pleaded guilty to the crime of chicken-stealing. On the latter offense he was paroled in December, 1934, because the docket recited that he was mentally incompetent, and his relatives offered to see that he received immediate medical attention. His parole was revoked in June, 1935, for violation, in that he had, while paroled, stolen chickens.

This simple recital of the evidence relating to the habitual criminal charge is made as an answer to the passionate appeal of the defendant's attorney, to show that Harmer at large has proved to be a menace to society. It seems a fair inference that these convictions may not comprise all of his depredations. Harmer was apparently charged with a felony under section 28-538, Comp. St. 1929. He was also charged with being an habitual criminal. The defense was insanity. The whole matter was properly submitted to the jury. Indeed, there is no complaint as to the instructions. The evidence is amply sufficient to sustain the verdict. It is not in conflict, with the possible exception of evidence of insanity, and the jury have resolved even that point against the plaintiff in error. The determination of this case depends upon the complaint that the trial court prejudicially excluded certain evidence relating to insanity. The court excluded the result of a hearing, including the proceedings, before the commissioners of insanity. This hearing was held after the commission of the complained act, and before the trial.

This is a criminal prosecution where the insanity at the time of the commission of the alleged offense was fully tried under a plea of not guilty. No reversible error could be predicated upon the refusal of the trial judge

to admit in evidence the result, finding, and proceedings of the insanity commission; because, even if admissible here, the defendant was in no way prejudiced. The same witnesses testified before the jury as in the *ex parte* sanity inquisition, and the jury had the benefit of their evidence. Although some states admit such evidence upon the hypothesis that such proceedings are *in rem,* there is no unity of judicial opinion as to this. A well-known author critically states the rule in substance to be that, at common law, a judgment in another case finding a fact now in issue is ordinarily not admissible. See Wigmore, Evidence, 1934 Supp., sec. 1671a. Where the result of an insane inquisition is admissible, the result is competent evidence, but recitals as to symptoms, or as to the cause and progress of the disease, are not competent proof of such facts. See 2 Wharton, Criminal Evidence (11th ed.) sec. 832, citing *People v. Cochran,* 313 Ill. 508, 145 N. E. 207. As stated in the first place, it is not reversible error, because not prejudicial to the rights of the plaintiff in error. The finding of an insanity commission is also subject to an attack before a jury in this jurisdiction.

The trial court also excluded some testimony of Mr. and Mrs. Prall as to the life history of the plaintiff in error. These witnesses were permitted to testify as to many facts which would bear upon the matter under consideration. An examination of the record discloses that many of the questions are not proper. Others are too remote to aid in reaching a verdict; and still others ask witnesses to state conclusions. Our attention is not focused upon any particular questions. The rule relating to nonexpert witnesses was carefully considered in *Torske v. State,* 123 Neb. 161, 242 N. W. 408. After citing numerous authorities, the court in substance held that nonexpert witnesses with an intimate personal acquaintance, who had an opportunity to observe the actions and demeanor of a person before, at, and after the time in question, may be permitted to testify as to his sanity or insanity after they have stated the facts supporting their conclu-

sion. Of course, as stated there, the worth of such an opinion depends upon the facts and circumstances related by the witnesses, as the jury reaches their own conclusion from the facts which they find to be true, aided by the conclusion of the witnesses. With the rule permitting a nonexpert witness to testify in mind, we do not find any prejudicial error in the exclusion of any evidence of Mr. and Mrs. Prall.

Lastly, the plaintiff in error insists that it was error to exclude the statement of the trial court in December, 1934, when his sentence was suspended, and he was released on his own recognizance after he had pleaded guilty to a felony. This is referred to as a parole, and was subsequently revoked as heretofore stated. Let us quote from an exhibit, the journal entry, as follows:

"The information was read to said defendant to which he entered a plea of 'guilty,' and it appearing to the court that the defendant is not mentally competent and his relatives being present in court with him offered to see that the defendant was given medical care immediately."

Mental incompetency is merely the reason given by a trial judge for entering another judgment. A perusal of this entire record is impressive for that it reveals that the plaintiff in error was not prejudiced, but that he had the benefit of every legal safeguard to which he was entitled.

AFFIRMED.